IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

      Plaintiff,

 v.

ELIZABETH GOODWIN,

      Defendant.

ORDER

10-cr-112-wmc

---

   The United States has filed a motion pursuant to Fed. R. Crim. P. 35(a) to correct what the parties jointly agree is the court's "clear error" in ordering restitution in the case against Dr. Elizabeth Goodwin beyond that stipulated to by the parties. The court appreciates the opportunity to address any real or perceived error and has carefully considered the motion filed by the government, the response filed by defense counsel, as well as the entire record of the case. Based on that review, the court will grant the motion.

   Notwithstanding defendant's objection, the court is satisfied that the offense of conviction -- a violation of 18 U.S.C. § 1003, Obtaining a Sum Not Greater than $1,000 from the Public Stocks of the United States by False Statement -- authorizes mandatory restitution under 18 U.S.C. § 3663A(c)(1)(A)(ii). The defendant's conviction is an offense against property under Title 18. The defendant and her counsel also entered into a written plea agreement, and confirmed in open court, that: (1) an offense under § 1003 "carries maximum penalties of one year in prison, a $100,000 fine, a one year period

of supervised release, a $25 criminal assessment period, *and the entry of an appropriate restitution order*"; and (2) she "should not rely upon the possibilities of a particular sentence based upon any sentencing discussions between defense counsel and the United States," since the court may ignore the government's recommendations provided it does not exceed the statutory maximum. (Dkt. #3 emphasis added).)

Notwithstanding the parties' objection, the court is also satisfied that the defendant received notice required by Fed. R. Crim. P. 32(c)(1)(B) that there was the possibility of a restitution order in favor of an additional victim, University of Wisconsin. Consistent with the Mandatory Victims Restitution Act of 1996, notice is provided at paragraph 16 of the presentence report, which identifies the victims of the offense, including "the deleterious effects on the reputation of the University of Wisconsin and the graduate students who were forced to abandon their research when the laboratory was shutdown."

While the presentence report stated there was "no identifiable monetary loss in this case," defense counsel subsequently filed on August 3, 2010, a report on Dr. Goodwin, prepared by a "Sentencing Consultant," Stephen Tupper, dated October 28, 2009. On page 34 of that report, the consultant makes two affirmative recommendations relevant to sentencing. First, he recommends that the defendant "anonymously endow a scholarship or make a donation to the University of Wisconsin, the UW Foundation of no less than $20,000." Second, he recommends that the defendant perform 200 hours of community service. The sentencing hearing was not, therefore, the first time it was

suggested that the University of Wisconsin may be a compensable victim, nor even that a reasonable restitution amount might be sizable.

The parties do note correctly that "The University of Wisconsin Foundation" is not a "victim" as that term is defined under § 3663A(a)(2), because it was not directly and proximately harmed by Dr. Goodwin's specific conduct that is the basis of the offense of her conviction. A clear preponderance of the evidence establishes, however, that the University of Wisconsin is a victim. As the court explained in its statement of reasons for ordering Dr. Goodwin to pay an additional $50,000 in restitution, it is satisfied on this record that the University of Wisconsin was directly and proximately harmed by Dr. Goodwin's fraud in at least this amount.

Dr. Goodwin alone was responsible for the fraud. As a result of her fraud, the University lost the continuation of a grant that both the defendant and her counsel admitted at the plea hearing would have been worth $1.4 million "had the project been funded until the end of the proposed period." Even had all of these funds been received, the University lost the value of the promised research itself associated with the grant. In addition, Dr. Goodwin was a salaried, tenured associate professor at the University during the period in which she falsified the progress, and indeed the conduct and results, of her research. Finally, though more difficult to quantify, the University suffered not just the lost fruits of her direct research, but the loss of derailed student progress and research, a tarnished reputation, and the time and cost of "a team of scientists lead by Dr. William Melon, UW Associate Dean for Research Policy," who uncovered and confirmed Dr.

Goodwin's fraud.

Acknowledging the difficulty in quantifying all of these losses, the court found by a preponderance of the evidence that they are real and the result of a direct, proximate injury suffered by the University as a result of Dr. Goodwin's June 22, 2005 false "grant progress report." Such losses support an order of restitution to the University. *See, e.g., United States v. Sapoznik*, 161 F.3d 1117, 1122 (7th Cir. 1998) (difficulty in estimating a loss does not bar restitution for such loss so long as quantification is "within reasonable bounds [of] the rough approximation that is . . . feasible in the computation of loss in a case such as this"). [1]

What turns out to be the fatal flaw in the court's current restitution order, at least in the court's view, is that it was fashioned based on a predicate clause of Count 1 of the Information, rather than on the narrow act to which Dr. Goodwin was ultimately allowed to plea. The government argues in its Rule 35(a) motion that the court erred by calculating the University's loss based on Dr. Goodwin's "broader pattern of deception, rather than [limiting it] to the discrete offense of conviction for falsifying data misrepresenting the progress of genetic research" in a "grant progress report" to NIH "on

---

[1] Citing the Seventh Circuit's recent decision in *United States v. Dokich*, No. 08-2850 slip op., 2010 WL 2836606 (7th Cir. July 21, 2010) defendant maintains that the sentence was also the result of error because "a restitution order should never exceed the loss used to calculate a sentence." *Id.* at *5. Since the court found "no quantifiable monetary loss" for purposes of § 2B1.1(b)(1) of the Sentencing Guidelines, defendant argues there can be no restitution order pursuant to §3663A. A closer reading of *Dokich*, however, suggests the remedy for this error is not to vacate the restitution order if based on sound evidence, but rather to recalculate the applicable guideline range. Given the 8 point increase that would result, the court doubts this is really an argument defendant wants the court to

4

or about June 22, 2005." This criticism is well taken, at least to the extent that the University's injuries may not have derived directly and proximately from a single, false submission to NIH. Though the report appears to be the triggering event, causing the research fraud to be exposed a few months later, the University's direct losses have more to do with the lack of research and false results. In combination with the fact that the government believes there is a lack of proximate cause (which is after all its burden to prove), and a healthy respect for process that resulted in arriving at what they viewed to be just punishment, the court finds clear error in its loss calculation and will amend the judgment of conviction to remove the requirement for additional restitution.[2]

ORDER

IT IS ORDERED that the government's Rule 35(a) motion (dkt. #24) is GRANTED.

Entered this 17th day of September, 2010.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge

---

pursue.

[2] Dr. Goodwin's agreement to pay National Institutes of Health $50,000 does not violate the maximum put for in *Dokich* because 18 U.S.C. § 3663(a)(3) allows Dr. Goodwin to enter into a plea agreement to pay any amount of restitution.